UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA HICKMAN, | ) | CASE NO. 5:21-CV-01991 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| THE SIMPLAY3 CO.. | ) | **ORDER AND DECISION** |
| | ) | (Resolves Doc. 13) |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

This matter is before the Court on Defendant The Simplay3 Company's ("Simplay") motion for summary judgment. Doc. 13. For the following reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's complaint is DISMISSED.

**I.   FACTS**

Simplay is a local company that designs and manufactures children's toys and furniture, among other products. Plaintiff began working at Simplay in February of 2019. Doc. 13-4, p. 16. Amber Hickman, Plaintiff's cousin, was Plaintiff's direct supervisor. Doc. 13-2, p. 1; Doc. 13-4, p. 48. Mark Copeland ("Copeland") oversaw Amber Hickman. Doc. 13-2, p. 1. Plaintiff was scheduled to work first shift, with regular hours being 7:00 am to 3:00 pm. Plaintiff requested and was granted a modified work schedule of 8:00 am to 4:00 pm due to childcare issues. Doc. 13-4, p. 43. Plaintiff subsequently requested and was approved to work third shift. Doc. 13-4, p. 38.

In November 2019, Plaintiff informed Simplay that she was pregnant. Doc. 13-4, p. 41-42. Due to her pregnancy, Plaintiff requested and was approved to work first shift to accommodate her doctor's appointments. Doc. 13-4, p.41-42.

In March of 2020, the State of Ohio issued a stay-home order in response to the Covid-19 pandemic.  Simplay was designated an essential manufacturing business, and therefore was able to continue operating with a reduced staff.  Doc. 13-1, p. 1. On March 23, 2020, Simplay informed employees that it had established a policy to operate with a significantly reduced workforce to ensure safety restrictions which permitted employees that did not feel comfortable stay home until the stay-home order was lifted. Doc. 13-1, p. 2. Copeland also instructed Amber Hickman to distribute the policy to Simplay employees via text message. Doc. 13-2, p. 2.  While at home, these employees were eligible for unemployment compensation benefits.  Doc. 13-4, p. 153-54.

On April 3, 2020, Amber Hickman reached out to Plaintiff via text message to find out whether Plaintiff would return to work in April or May.  Doc. 13-2, p. 7.  Plaintiff responded that "Im not riskin it" (sic) and questioned how the company was still open. Doc. 13-2, p. 7.

On April 30, 2020, the State of Ohio lifted its stay-home order and per Simplay's policy, employees that elected to stay home during the pendency of the stay-home order were expected to return to work effective May 4, 2020. Doc. 13-2, p. 2. Plaintiff acknowledged that she understood that employees were back to work when the stay-home order was lifted. Doc. 13-4, p. 152. Plaintiff did not return to work at that time. Doc. 13-1, p. 2. Plaintiff made no formal request for maternity leave.  Doc. 13-4, p. 82. Plaintiff gave birth on June 29, 2020. Doc. 13-4, p. 81.

Simplay concluded that Plaintiff had voluntarily abandoned her position due to her failure to return to work or to communicate with Simplay about returning to work.  Doc. 13-2, p. 3. At some point in August 2020, Plaintiff reached out to Copeland about returning to work. Doc. 13-4, p. 102; Doc. 13-2, p. 2. Copeland informed Plaintiff that Simplay had reassigned her job responsibilities to another female worker, and therefore she did not have a position to which she could return.  Doc. 13-2, p. 2-3; Doc. 13-4, p. 97.

II. **LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

**III.     LAW AND ANALYSIS**

Plaintiff asserts that Simplay discriminated against her based on gender and/or pregnancy, in violation of Title VII and O.R.C. 4112[1] and disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). To establish a prima facie case of discrimination based on gender, pregnancy, or disability, Plaintiff must establish that she suffered from an adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972); *Peltier v. U.S.*, 388 F.3d 984, 987 (6th Cir. 2004) (Title VII prima facie case requires an adverse action); *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (ADA prima facie case requires an adverse action). At issue in this case is whether Plaintiff suffered an adverse action based on gender, pregnancy, or disability.[2]

Plaintiff points to two adverse actions to support her prima facie case; 1) she was assessed attendance points for requesting time off to attend medical appointments in connection with her pregnancy and 2) Simplay terminated her by advising her not to return to work in April and May of 2020. Simplay asserts that Plaintiff did not receive attendance points for her prenatal doctor's appointments, and that she was never forbidden from returning to work after the Covid stay-home order was lifted, and that by not returning pursuant to policy, she abandoned her position. Doc. 24, p. 2.

Regarding her assertion that she received attendance points in connection with prenatal appointments, Plaintiff states that "Simplay fails to address (and, more crucially, does not dispute) the assessment of attendance points to Hickman for duly requesting time off to attend medical appointments in connection with her pregnancy." Doc. 19, p. 9. Upon review, the only reference Plaintiff ever makes to attendance points as an adverse action was a passing reference at her

---

[1] Title VII and Ohio Revised Code Chapter 4112 are analogous and therefore are analyzed under the same framework. *Kudla v. Olympic Steel, Inc.*, 2014-Ohio-5142, 2014 Ohio App. LEXIS 5003 (8th App. Dist. 2014).
[2] Because the Court's conclusion rests on this issue, the Court need not address the remaining prongs of Plaintiff's prima facie case

4

deposition. Doc. 13-4, p. 70-74. Plaintiff's complaint makes clear that the adverse action at issue was her alleged termination: Doc. 1, p. 4-5.

Defendant points to its discovery response that there were no documents responsive to Plaintiff's request for documents "relating to any disciplinary action or corrective action taken against Plaintiff during her employment with Simplay." Doc. 19-2, p. 6. Defendant also produced Plaintiff's complete personnel file. Id. Plaintiff does not point to any documentation to support her claim that she received attendance points thus indicating that there were no such documents in her personnel file. This supports Defendant's response that Plaintiff did not receive disciplinary points for prenatal appointments. Simply put, there is no evidence to support Plaintiff's contention.

Regarding her alleged termination, Plaintiff contends that she did not abandon her position, but that Simplay expressly forbade her from returning to work because of her pregnancy, "namely because her pregnancy placed her at greater risk for Covid-19 complications." Doc. 19, p. 9. Plaintiff points only to her deposition testimony to support this contention. Plaintiff testified that Copeland "considered me high risk – and, again, that was without any doctor's note or anything stating that—and he would not let me go back to work at that timeframe [(when Covid started)]." Doc. 13-4, p. 75. She further explained that Copeland never told her this personally, but that he told Amber Hickman who told her. Id. Plaintiff testified that she asked Amber Hickman why she was high risk, and Amber Hickman told her that she could return with a doctor's note. Doc. 13-4, p. 76.

Plaintiff testified that she could not recall anything else about the conversation and that she could not recall if she obtained a doctor's note allowing her to return to work, but she did recall that her doctor verbally told her she was not high risk. Doc. 13-4, p. 76-77. Plaintiff claimed that she was in "constant communication" with Simplay regarding her return to work, but she was "not

5

allowed to return, because Mark said I was high risk up until the baby was born." Doc. 13-4, p. 86. When asked to further explain, Plaintiff indicated that she could not recall any further conversations with Amber Hickman or any conversations with Copeland. Id. She stated that "[t]he constant communication was not always about work related things and returning to work. It was work related but not about returning to work." Doc. 13-4, p. 88.

Plaintiff's deposition testimony directly conflicts with documented evidence of her April 3, 2020 text exchange with Amber Hickman. Amber Hickman specifically asked Plaintiff if she would come back at that time or wait until May 1, 2020. Plaintiff responded that she was not risking it. Doc. 13-2, 7. If Simplay perceived Plaintiff as high risk and thus unable to return to work until after the baby was born, Amber Hickman would not have inquired into Plaintiff's return to work prior to that time. Further, Plaintiff's statement that she was not risking it directly contradicts her testimony that her doctor told her she was not high risk.

Plaintiff attempted to discredit this text conversation by explaining that Amber Hickman's question to her was "[n]ot as my boss, though. This is just a cousin conversation." Doc. 13-4, p. 158. Plaintiff confirmed that she understood Amber Hickam's question was about returning to Simplay. Doc. 13-4, p. 159. She confirmed that when she said she was not risking it, she was referring to returning to Simplay. Doc. 13-4, p. 159. Despite how she attempts to categorize the conversation, she admits it occurred and that she did not seek to return to work until August. Therefore, the Court concludes that Plaintiff abandoned her position.

Plaintiff cannot establish as a matter of law that she suffered an adverse action due to her gender, pregnancy, or disability. Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's complaint is dismissed.

## IV. CONCLUSION

For the reasons set forth herein, the Defendant's motion for summary judgment is GRANTED and this case is DISMISSED.

IT IS SO ORDERED.

DATE: March 29, 2023 /s/ *John R. Adams*
Judge John R. Adams
UNITED STATES DISTRICT COURT